UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**RAJEL JOHNSON, # 503039**　　　　　　　　　　　　　　　　**CIVIL ACTION**

**VERSUS**　　　　　　　　　　　　　　　　　　　　　　　　　　**NO. 20-3054**

**JAMES M. LEBLANC, ET AL.**　　　　　　　　　　　　　　　**SECTION: "B"(3)**

### REPORT AND RECOMMENDATION

Plaintiff, Rajel Johnson, a state prisoner, filed this federal civil action pursuant to 42 U.S.C. § 1983. He named the following defendants: James LeBlanc, the Secretary of the Louisiana Department of Public Safety and Corrections; Robert Tanner, the former Warden of the Rayburn Correctional Center ("RCC"); Keith Bickham, RCC's Deputy Warden; "John Doe," a Rain Gate Officer; "John Doe," a Snow Key Officer; and "John Doe," a Snow Dorm Officer.[1] In this lawsuit, plaintiff claims that his federal constitutional rights were violated when the defendants failed to protect him from an attack by his fellow inmates.

Plaintiff filed this civil action *in forma pauperis*. Concerning such actions, federal law provides:

> Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that ... the action ...
>
>    (i)    is frivolous or malicious;
>    (ii)   fails to state a claim on which relief may be granted; or
>    (iii)  seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

---

[1] "Rain" and "Snow" are names of two of RCC's inmate housing units.

In addition, because plaintiff is incarcerated, he is also subject to the screening provisions of 28 U.S.C. § 1915A. That statute mandates that federal courts "review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a). Regarding such lawsuits, federal law similarly requires:

> On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint –
>
> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b).

A complaint is frivolous "if it lacks an arguable basis in law or fact." Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). In determining whether a claim is frivolous, the Court has "not only the authority to dismiss a claim based on an indisputably meritless legal theory, but also the unusual power to pierce the veil of the complaint's factual allegations and dismiss those claims whose factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989); Macias v. Raul A. (Unknown), Badge No. 153, 23 F.3d 94, 97 (5th Cir. 1994).

A complaint fails to state a claim on which relief may be granted when the plaintiff does not "plead enough facts to state a claim to relief that is plausible on its face. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." In re Katrina Canal Breaches Litigation, 495 F.3d 191, 205 (5th Cir. 2007) (citation, footnote, and quotation marks omitted).

Although broadly construing the complaint,[2] the undersigned recommends that, for the following reasons, plaintiff's federal civil rights claims be dismissed as frivolous and/or for failing to state a claim on which relief may be granted.

In the complaint, plaintiff states his claims as follows:

> One of the Officers' Job/Tasks is to ensure that an offender who is assigned to a specific housing unit goes back to said housing unit and/or the Officer is to seek if said offender has a "walk pass" to proceed to another housing unit for a valid reason.
> The rain Gate Officer is one (1) of three (3) Officers who should have asked Offender Chatman where he was going and to ask Offender Chatman if he had a "walk pass" from the Lieutenant of his housing unit, in this case, his respective housing unit is located on Wind Unit. The Rain Gate Officer should have called the Wind Lieutenant and asked if he provided Offender Chatman with a walk pass. This Rain Gate Officer **failed** to perform his/her job.
> Offender Chatman made his way to my housing unit and entered uninterrupted. There are two (2) Officers who sit just inside each housing unit, in this case the housing unit is known as "Snow Unit". Neither the assigned Lieutenant nor the Officer sitting in the same booth as said Lieutenant, commonly known as the "Key Officer" bothered to stop Offender Chatman from walking no more than three (3) feet from both of them, (Knowing Offender Chatman was not assigned to Snow Unit) and enter my assigned dorm (Snow 2). Moreover, there is an Officer assigned to the Dorm. This Officer, like the other previous three (3) failed to stop and as Offender Chatman for a "walk pass".
> Offender Chatman had brought a friend of his from Wind Unit (Offender Marlon Route) to assist him.
> Petitioner avers that four (4) trained Correctional Officers allowed not one (1) but two (2) Offenders to walk from Wind Housing Unit all the way to Snow Housing Unit and stab me in the back. Offender Marlon Route, had it not been for him pulling the weapon out of his friends' hand, matters would have been worst for this Offender.
> Lastly, Deputy Warden Keith Bickham the number two (2) Warden typed and filed a false government document when he claimed none of his Officers were negligent due to the walk being (so called) busy.
> What Deputy Bickham failed to state and it is something he knows well, as he has over four (4) decades of Corrections experience, is that to mitigate and/or prevent stabbings from occurring, Rayburn Correctional Center **ONLY** call's one housing unit at time for movement on the Walk, such as chow and pill call.

---

[2] The Court must liberally construe a *pro se* civil rights complaint. See Moore v. McDonald, 30 F.3d 616, 620 (5th Cir. 1994).

> Thus, his claim is grossly understated and is without merit.
> Four (4) trained C/O's, neither ask Offender Chatman's or Marlon Route where they were headed, or if they had a walk pass.[3]

Based on the foregoing allegations, it is evident that plaintiff is attempting to assert "failure-to-protect" claims against the named defendants. However, for the following reasons, his supporting factual allegations are insufficient to state cognizable, nonfrivolous constitutional claims.

It is "well established that prison officials have a constitutional duty to protect prisoners from violence at the hands of their fellow inmates." Longoria v. Texas, 473 F.3d 586, 592 (5th Cir. 2006). However, "[t]his duty, grounded in the Eighth Amendment, is nevertheless a limited one." Gibson v. Gusman, Civ. Action No. 14-2273, 2015 WL 5060854, at *9 (E.D. La. Aug. 18, 2015) (Lemelle, J.). For example, while prison officials must provide inmates with "reasonable" safety, a guarantee of "absolute" safety is not required. See, e.g., Zara v. Strain, Civ. Action No. 09-3919, 2011 WL 723409, at *8 n.22 (E.D. La. Feb. 22, 2011) ("[P]laintiff's claims seemed to be based on a premise that prison administrators are at fault for random attacks unless they have taken all conceivable precautions to ensure the absolute safety of all inmates regardless of the actual likelihood of serious harm. That is not the law. While prison officials must clearly make reasonable efforts to formulate policies to provide a safe environment, they simply cannot ensure that all inmates will at all times be absolutely safe from random, unanticipated attacks."), aff'd, 458 F. App'x 393 (5th Cir. 2012); accord Watson-Buisson v. Louque, Civ. Action No. 12-1871, 2013 WL 5236611, at *6 n.17 (E.D. Sept. 13, 2013) ("[T]he Court ... notes that plaintiff's claim is seemingly based on a premise that an inmate's constitutional rights are violated when a prison

---

[3] Rec. Doc. 1, pp. 4-5.

official fails to successfully guarantee the inmate's safety. That contention is neither supported by controlling law nor even minimally practical considering realties of prison administration and the pervasiveness of inmate disputes over matters both large and small. In light of those realities, courts have noted that it is impossible to expect that prison officials can make jails havens of absolute safety."); Kron v. Tanner, Civ. Action No. 10-518, 2010 WL 3199854, at *6 (E.D. La. May 19, 2010) ("[P]laintiff seems to believe that prison officials have a constitutional duty to guarantee his absolute safety. They most assuredly have no such obligation. On the contrary, the Eighth Amendment mandates only 'reasonable' safety in prisons."), adopted, 2010 WL 3171040 (E.D. La. Aug. 6, 2010). To require "absolute" safety would ask the impossible of prison administrators:

> [I]t is doubtful that inmate against inmate violence can ever be prevented within a prison setting no matter how carefully a prison might be operated. Courts must comprehend the magnitude of the prison administrators' problem and recognize the distinctly unique situation caused by confining human beings in a tension-filled atmosphere. Inmate assaults upon inmates are not unusual in the best run prisons.

Campbell v. Anderson, 335 F. Supp. 483, 486 (D. Del. 1971); accord Farmer v. Brennan, 511 U.S. 825, 858-89 (1994) (Thomas, J., concurring) (noting that "[p]risons are necessarily-dangerous places" which "house society's most antisocial and violent people in close proximity with one another" and that "some level of brutality ... among prisoners is inevitable no matter what the guards do unless all prisoners are locked in their cells 24 hours a day and sedated") (quotation marks, brackets, and ellipsis omitted). Indeed, "[t]his is often the predicament confronting prison officials who must serve as referees, as well as custodians, over incarcerated individuals who are not known for their civility or their ability to negotiate amicably or reasonably with other

5

individuals." McKnight v. Livingston, Civ. Action No. H-06-3674, 2007 WL 221926, at *2 (S.D. Tex. Jan. 25, 2007).

In light of those realties, the United States Fifth Circuit Court of Appeals has explained:

> To establish a failure-to-protect claim under § 1983, [a prisoner] must show that he was incarcerated under conditions posing a substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection. In order to act with deliberate indifference, *the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.*

Neals v. Norwood, 59 F.3d 530, 533 (5th Cir. 1995) (emphasis added; citations and internal quotation marks omitted). Moreover, "[d]eliberate indifference must be viewed from [the defendant's] perspective at the time in question, not with hindsight's perfect vision." Jackson v. Everett, 140 F.3d 1149, 1152 (8th Cir. 1998); accord Dangerfield v. Dyson, Civ. Action No. 05-0650, 2008 WL 718114, at *3 (E.D. La. Mar. 14, 2008).

Here, there is no indication that any of the named defendants were aware of facts from which they could have drawn an inference that offenders Chatman and Route posed a substantial risk of serious harm to plaintiff. For example, there is no suggestion that anyone, not even plaintiff himself, had forewarning that they might attack him – or, for that matter, were aware that they had a history of such attacks on *any* of their fellow inmates. On the contrary, nothing in plaintiff's allegations suggest that the attack on him was anything more than an unanticipated, random act of violence. And, while that attack was undeniably unfortunate, the mere fact that it occurred, without more, simply is not evidence of a *constitutional violation*.

That remains true even if, as plaintiff seems to suggest, a prison policy required correctional officers to check inmates for "walk passes." In and of itself, "a prison official's failure to follow prison policies or regulations does not establish a violation of a constitutional right."

6

Lewis v. Secretary of Public Safety and Corrections, 870 F.3d 365, 369 (5th Cir. 2017); accord McFaul v. Valenzuela, 684 F.3d 564, 579 (5th Cir. 2012) ("An assertion that prison officials failed to follow prison rules or policies does not set forth a constitutional claim.").

It also remains true even if the defendants acted *negligently* by failing to check whether Chatman and Route possessed such passes. Simply put, "negligence is not a theory for which liability may be imposed under section 1983." Eason v. Thaler, 73 F.3d 1322, 1329 n.3 (5th Cir. 1996); accord Baker v. McCollan, 443 U.S. 137, 146 (1979) ("Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law."); Nesmith v. Taylor, 715 F.2d 194, 195 (5th Cir. 1983) ("It is fundamental to our federal jurisprudence that state law tort claims are not actionable under federal law; a plaintiff under section 1983 must show deprivation of a federal right."). Therefore, the mere fact that a defendant "fail[ed] to act reasonably" is insufficient to establish the deliberate indifference required for a constitutional claim. Wagner v. Bay City, Texas, 227 F.3d 316, 324 (5th Cir. 2000) (quotation marks omitted). Rather, "[d]eliberate indifference requires the defendant to have a subjective state of mind *more blameworthy than negligence*, akin to criminal recklessness." Valentine v. Collier, 956 F.3d 797, 802 (5th Cir. 2020) (citation and quotation marks omitted). Plaintiff's allegations, even if accepted as true, do not evince that more blameworthy state of mind.

Lastly, equally meritless is plaintiff's contention that his rights were violated when Bickham issued a report finding that that the officers were not guilty of negligence on this occasion. While plaintiff obviously believes they were negligent, the mere fact that Bickham held a contrary opinion neither rendered his report "false" nor resulted in a violation of plaintiff's rights as enshrined in the United States Constitution.

7

All that being said, the Court in no way means to minimize the seriousness of what occurred in this case. Nevertheless, plaintiff brought this lawsuit pursuant to 42 U.S.C. § 1983, and that statute provides remedies only for individuals who have suffered a constitutional deprivation. Here, even when the Court broadly construes plaintiff's factual allegations and accepts them as true for the purpose of this opinion, those allegations are simply insufficient to state a cognizable, nonfrivolous *constitutional* claim against any of the named defendants.

### RECOMMENDATION

It is therefore **RECOMMENDED** that plaintiff's federal civil rights claims be **DISMISSED WITH PREJUDICE** as frivolous and/or for failing to state a claim on which relief may be granted.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. 28 U.S.C. § 636(b)(1); Douglass v. United Services Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this __23rd__ day of November, 2020.

_____
**DANA M. DOUGLAS**
**UNITED STATES MAGISTRATE JUDGE**